

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

ENTERED
05/15/2014

| | | |
|---|---|---|
| IN RE: | § | |
| **HIDALGO LOGISTICS, LLC** | § | **CASE NO: 13-70239** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **JENROB INVESTMENTS, LP** | § | |
| **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 13-07013** |
| | § | |
| **HIDALGO LOGISTICS, LLC,** *et al* | § | |
| **Defendant(s)** | § | |

## MEMORANDUM OPINION

The Court has "related to" jurisdiction under 28 U.S.C. § 1334 for each removed cause of action. Plaintiff's motion for permissive abstention is denied. (Case No. 13-07013, ECF No. 14). Defendants' motion to vacate the severance order is granted. (ECF No. 28).

**Relevant Background**

This adversary is comprised of four removed state court lawsuits. The original state suit arose out of a sale and lease back arrangement between Efrain Barbosa, owner of Hidalgo Logistics, LLC and E.B. International ("EBI"), and Robert Yarto, owner of Jenrob Investments, LP. There are significant factual disputes between the parties. Although these disputes need not be resolved at this point, a summary of each party's alleged facts provides helpful background for understanding the remand and abstention issues presented.

**A. Plaintiff's Alleged Facts**

Plaintiff alleges the following facts: The parties entered into an arrangement for Barbosa to transfer land to Jenrob. Jenrob was to obtain financing to construct a warehouse, lease the warehouse back to Hidalgo, and provide Hidalgo with an option to buy the warehouse. In

exchange, Jenrob would be able to expand its business by utilizing services provided by Hidalgo in the warehouse.

Jenrob was the lessor to Hidalgo Logistics, LLC, Hidalgo Cold Storage, Inc., E.B. International, LLC ("EBI"), and/or Efrain Barbosa, under a Dry Storage Lease, a Cold Storage Lease, an Amended Cold Storage Lease, and an Oral Agreement.  Under the Dry Lease, EBI and Barbosa were obligated to pay the construction contractor for the cost of constructing improvements on the premises ("Phase I").  Jenrob subsequently entered into another agreement relating to the construction and lease of a cold storage facility, under which Barbosa and Hidalgo were required to pay the contractor for the full cost of construction of the cold storage facility ("Phase II").  Jenrob claims that Barbosa did not pay the contractor in full for the costs of Phase I and that this required Jenrob to pay the contractor approximately $8,500,000.00 in order to proceed with Phase II of the construction.  After the construction was complete, Jenrob entered into the Cold Storage Lease with Barbosa and Hidalgo.  Jenrob alleges that Hidalgo and Barbosa failed to make a single monthly payment under the Cold Storage Lease.  Jenrob also contends that EBI and Barbosa failed to make payments under the Dry Lease.

Jenrob contends that in February of 2011, Jenrob and the defendants negotiated an amendment to the Cold Storage Lease to incorporate a schedule of catch up payments because Barbosa and Hidalgo were behind almost $700,000.00 in rent.  Under that agreement, the defendants agreed to pay increased monthly rent, EBI agreed to waive part of the fee it had been charging Jenrob for each importation of goods (to be applied to the Hidalgo's rent arrearages), and defendants executed a note in favor of Jenrob.  The defendants allegedly failed to make timely payments under the Amended Cold Storage Lease.

Jenrob claims that "[t]he failure of Barbosa and the Debtor to make the monthly payments under the Cold Storage Lease caused Jenrob to default on the mortgages secured by the Premises." (ECF No. 29 at 2). Jenrob further alleges that defendants negotiated with the secured lenders to purchase the leased premises out of foreclosure. Defendants and Jenrob allegedly reached an Oral Agreement whereby Jenrob would permit defendants to forego payment of all past due rent, and defendants would instead perpetually reimburse Jenrob $220.00 of the per-load importation fees paid by Jenrob for every load of goods imported through the Premises. The foreclosures proceeded and defendants purchased the premises from the secured lenders. Defendants initially paid the importation funds, but allegedly stopped paying the importation fees in February 2012.

### B.  Defendants' Alleged Facts

Defendants admit that the parties entered into a sale lease back arrangement with Jenrob, but claim that Hidalgo made all of its required lease payments to Jenrob.

Hidalgo contends that at some point Jenrob presented the following alternative payment arrangement to defendants: In exchange for Hidalgo's agreement to perform certain services for Jenrob, Jenrob would apply "in kind" credits to Hidalgo's lease payment obligations. Hidalgo contends that it agreed to the modified deal because Jenrob represented that the construction note payments were current and serviced, when in fact Jenrob was in serious default on the notes. As a result, Border Capital and First National Bank posted the warehouse and land for foreclosure. On October 21, 2011, Barbosa filed an action in the 93rd District Court, Hidalgo County against Border Capital and Robert Yarto (owner of Jenrob) seeking an injunction to prevent the foreclosure. Hidalgo claims that First National Bank eventually agreed to loan Hidalgo the funds

to purchase the warehouse at foreclosure after learning that Hidalgo had in fact been making its lease payments.

### C.  Jenrob's State Suit

On June 21, 2012, Jenrob filed a suit against Hidalgo Logistics, LLC (Debtor), Hidalgo Cold Storage, Inc., E.B. International, LLC ("EBI"), and Efrain Barbosa.  (ECF No. 28-2).  The case was assigned to the 332nd District Court, Hidalgo County.

Jenrob's complaint asserts seven causes of action against the defendants: (1) breach of contract (Oral Agreement), (2) breach of contract (Cold Storage Lease), (3) breach of contract (Dry Storage Lease), (4) foreclosure and motion for temporary restraining order and temporary injunction, (5) application for appointment of receiver, (6) fraudulent inducement, and (7) tortious interference with contractual relations.  For nearly every cause of action, Plaintiff requests relief under an "alter ego" theory.  The first, second, fourth, fifth, and sixth causes of action were brought against Hidalgo and the non-bankruptcy defendants Barbosa and EBI.  The third (breach of the Dry Storage Lease) and seventh (tortious interference) causes of action were only brought against the non-bankruptcy defendants Barbosa and EBI.

Defendants filed a special appearance, an answer, certain counterclaims, affirmative defenses, and a motion to abate/transfer.  The defendants contended that Plaintiff's claims were compulsory counterclaims that should have been brought in the suit filed by Barbosa in the 93rd District Court.  Defendants' motion to transfer back to the 93rd District was denied.

### D.  Order Granting Partial Summary Judgment and Severance

The 332nd District Court granted partial summary judgment on causes of action Two, Three, and Four on May 2, 2013. (ECF No. 1-4 at 29-32).  The Order grants partial summary judgment (i) against Hidalgo and EBI for cause of action Two (breaching the Dry Storage Lease)

in the total sum of $621,644.18 in unpaid rents plus interest and certain fees, (ii) against EBI for cause of action Three (breach the Cold Storage Lease) in the total sum of $21,313.55 in unpaid rents plus interest and certain fees, and (iii) against Hidalgo and EBI for cause of action Four, which foreclosed Plaintiff's security interest in certain personal property.

The Order also purports to sever causes of action Two, Three, and Four into a new lawsuit (the "Severed Action"). The Order also states "this Order shall be final and appealable." (ECF No. 1-4 at 32). However, causes of action Two and Four were originally pled against all of the named defendants and cause of action Three was pled against EBI and Barbosa.

After Hidalgo filed for bankruptcy, but before the removal, the defendants filed a timely motion for new trial, an emergency motion to set aside the summary judgment, and a notice of appeal. (ECF No. 1-4 at 34-49; 98-112); (ECF No. 1-6 at 78). These motions were not ruled upon in state court prior to removal. Defendants argue, among other things, that because this partial summary judgment order did not dispose of all the parties on any of the three causes of action, the order was interlocutory and the severance improper. (ECF No. 27 at 7).

Defendants also allege that after the Partial Summary Judgment Order was granted, defendants discovered that Plaintiff's counsel had an attorney client relationship with the Judge in the 332nd District Court. Based on this information, Defendants filed a motion to recuse. (ECF No. 1-4 at 98-112). On July 26, 2013, the case was transferred from the 332nd District Court to the 93rd District Court of Hidalgo County. (ECF No. 1-5 at 51).

### E.  The Hidalgo Bankruptcy and Removed Cases

This adversary proceeding consists of four removed lawsuits. On May 15, 2013, Hidalgo filed its Chapter 11 case. On August 13, 2013, Hidalgo filed a notice of removal purporting to remove the state suit from the 93rd Judicial District Court in Hidalgo County to the United States

Bankruptcy Court for the Southern District of Texas. (ECF No. 1). This notice of removal included three of the four lawsuits—the original action, the severed action, and a garnishment action—which all stem from the state court suit that was originally filed in the 332nd District and later transferred to the 93rd District of Hidalgo County. The original suit filed by Barbosa in the 93rd District is not part of this proceeding.

On August 26, 2013, after the three lawsuits were removed, Jenrob filed a suit to foreclose on an Abstract of Judgment which seeks declaration of a lien on EBI's property and seeks judicial foreclosure of the lien. This lawsuit appears to be an attempt to enforce the Partial Summary Judgment Order that relates to the severed action that was removed to this court on August 13, 2013.

On October 14, 2013, defendant EBI removed this foreclosure action from the 370th District Court of Hidalgo County. (Case No. 13-07020, ECF No. 1). The Court subsequently issued an Order consolidating EBI's removal, Adversary No. 13-07020, with the August 13, 2013 removal under Adversary Case No. 13-07013.

The pending issues in this adversary proceeding include determining (i) whether the summary judgment order was properly severed, (ii) whether the severed action is final or interlocutory, and (iii) whether the summary judgment order was properly entered.

On October 28, 2013, Jenrob Investments, LP brought a motion to remand the removed actions for lack of jurisdiction pursuant to 28 U.S.C. §1452 (a) and (b) or to abstain from the removed actions and remand, all as required or permitted by §1334 (c) (1) and (2).

### F.  January 29, 2014 hearing

On January 29, 2014, the Court held a hearing on Jenrob's motion to remand.  The removal record was the only evidence admitted. (ECF No. 1-1: 1-7).  The record was admitted for the sole purpose of defining the disputes between the parties.

At the hearing, the Court denied mandatory abstention, ruled that all claims based on an alter ego theory would not be remanded to state court, and requested briefing on (i) the application of the *Rooker-Feldman* doctrine and (ii) whether the Court has "related to" jurisdiction for each remaining cause of action.

*Mandatory Abstention Denied*

At the hearing, the Court denied the motion for mandatory abstention due to lack of evidence on the timeliness of adjudication in the 93rd District Court of Hidalgo County.

Jenrob argues that mandatory abstention applies pursuant to 28 U.S.C. § 1334(c)(2). This section provides that:

> [U]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). In other words:  "A bankruptcy court, therefore, must abstain from hearing a state-law claim when *all* of the following statutory requirements are met: (1) a motion has been timely filed requesting abstention; (2) the cause of action is essentially one that is premised on state law; (3) the proceeding is non-core, *i.e.*, it is "related to" a case under title 11 but does not arise under or in a case under title 11; (4) the proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case; (5) an action has

been commenced in state court; and (6) the action can be timely adjudicated in state court." *See Ramirez v. Rodriguez (In re Ramirez)*, 413 B.R. 621, 626 (Bankr.S.D.Tex.2009)(citations omitted). Mandatory abstention applies only when **all six requirements** are satisfied. *See id*. at 628 (citation omitted).

In this case, no evidence was presented on the sixth element, the timeliness of adjudication. Although Jenrob set forth evidence of the 332nd District Court's ability to timely adjudicate, Jenrob failed to present any evidence on whether the removed actions could be timely adjudicated in the 93rd District Court. Nor does the record indicate whether the 93rd District Court could timely adjudicate the removed actions. Accordingly, mandatory abstention was denied.

*Rooker Feldman Doctrine*

At the hearing, Jenrob argued that removal violated the *Rooker-Feldman* doctrine, while the defendants insisted that *Rooker-Feldman* was not applicable to the removed proceedings.

The Court requested briefing on whether the state court Summary Judgment Order was a final judgment for the purposes of the *Rooker-Feldman* doctrine. After the hearing, Jenrob filed a brief stipulating that the *Rooker-Feldman* doctrine is not applicable to the removed proceedings. (ECF No. 32).

Under the *Rooker- Feldman* doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). However, where there has not been a final state court judgment which can be attacked by a defendant, the *Rooker-Feldman* doctrine does not apply. *Reyna v. Deutsche Bank Nat'l Trust Co.*, 892 F.Supp.2d 829, 831

(W.D.Tex.2012). The doctrine applies only after state court proceedings have ended, meaning that there is no further opportunity for state appeals. *See Nicholson v. Shafe*, 558 F.3d 1266, 1270-79 (11th Cir.2009); *Rowley v. Wilson*, 200 F.Appx. 274, 275 (5th Cir.2006) (per curiam) (unpublished); *Powers v. Tex. Prop.&Cas. Ins. Guar. Assoc.*, 2010 WL 276164 at *1 n. 3 (S.D.Tex. Jan. 19, 2010).  As the Fifth Circuit explained in *Rowley*: "*Exxon Mobil* tells us when a state court judgment is sufficiently final for operation of the *Rooker-Feldman* doctrine: when 'the state proceedings [have] ended.' At the time appellant filed this federal lawsuit, their state proceedings had not ended. The state case was on appeal to the Louisiana appellate court. Accordingly, the Rooker-Feldman doctrine is inapplicable." *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006)(internal citations omitted).

The 332nd District Court's Partial Summary Judgment Order was not a final order because it did not dispose of all claims and parties. *See Lehmann v. Har-Con Corp.,* 39 S.W.3d 191, 205-206 (Tex.2001) ("As the order recites and as the record demonstrates, the defendant named in the order was not the only defendant remaining in the case. Thus, we conclude that a final and appealable judgment was not rendered in either case."). Accordingly, the *Rooker-Feldman* doctrine is not applicable to any portion of these removed proceedings because the partial summary judgment order was interlocutory.

*Claims Derivative of Piercing the Corporate Veil*

In *S.I. Acquisition*, the Fifth Circuit held that a creditor's state court action against non-bankruptcy defendants, based on an alter ego remedy under Texas law, belonged to the corporate debtor and was property of the estate.  *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987)("Since the corporation has an independent existence at law, we do not believe it is inconsistent in light of the above policy to say that a corporation may pierce its own corporate

veil and hold accountable those who have misused the corporation in order to meet its corporate obligations.").

Jenrob has asserted claims against the defendants based on an alter ego theory. Paragraph 8 of Jenrob's complaint alleges that the defendants are alter egos of each other. (ECF No. 28-2 at 9). This paragraph was incorporated into five of the seven causes of action. In light of *S.I. Acquisition*, the Hidalgo bankruptcy estate owns the veil-piercing claims asserted against the non-debtor defendants.

At the January 29, 2014 hearing, Jenrob's counsel stipulated that any claims against the non-debtor defendants that are based on piercing the corporate debtor's veil must remain in the bankruptcy court because these claims belong to the estate. Accordingly, the Court ruled that no claims based on piercing the corporate debtor's veil would be remanded to state court.

However, the original complaint also alleges that each defendant is independently liable under certain causes of action that are not exclusively premised on piercing the corporate debtor's veil. In Jenrob's brief, it states that the first, sixth, and seventh causes of action assert claims that are independent of its veil-piercing claims. (ECF No 29 at 4-6). After reviewing the complaint, the Court agrees that recovery against the non-debtor defendants on those causes of action do not rely exclusively on veil-piercing. Accordingly, those certain claims do not belong to the estate and the Court must determine whether it has "related to" jurisdiction for each one.

### "Related to" Jurisdiction

The burden of demonstrating that the remaining claims are "related to" the bankruptcy rests on the removing party, Hidalgo. Accordingly, the Court requested briefing on whether the Court has "related to" jurisdiction for each claim against the non-debtor parties that is not reliant on piercing the debtor's corporate veil.

### A.  Standard

Under 28 U.S.C. § 1334(b), district courts have original jurisdiction over "all civil proceedings … related to cases under title 11." The Fifth Circuit has held that "[p]roceedings are 'related to' bankruptcy cases if their outcome could conceivably have any effect on the estate." *In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 304 (5th Cir. 2013) (internal quotation marks omitted). "A 'conceivable effect' in this context is any that *could* alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which *in any way* impacts upon the handling and administration of the bankrupt estate." *Id.* (emphases in original) (internal quotation marks omitted). As this Court has observed, "[e]ven when there is a possibility a suit may ultimately have no effect on the estate, this possibility is not enough to conclude there would be no conceivable effect." *In re Mugica*, 362 B.R. 782, 788 (Bankr. S.D. Tex. 2007) (citing *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987)). "Certainty or even likelihood of such an effect is not a requirement." *Id.* (citing *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir. 2001)); *see also In re Canion*, 196 F.3d 579, 586-587 (5th Cir. 1999) (finding "related to" jurisdiction even though "the sequence of events that would reduce the claims against [the debtor's] bankruptcy estate was not certain to occur").

As both the Supreme Court and the Fifth Circuit have made clear, jurisdiction under § 1334(b) is broad.  In one case, for example, the Supreme Court stated that:

> Congress did not delineate the scope of "related to" jurisdiction, but its choice of words suggests a grant of some breadth. The jurisdictional grant in § 1334(b) was a distinct departure from the jurisdiction conferred under previous Acts, which had been limited to either possession of property by the debtor or consent as a basis for jurisdiction.… Congress intended to grant *comprehensive* jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate[.]

*Celotex Corp. v. Edwards*, 514 U.S. 300, 307-308 (emphasis added) (footnote, citations, and internal quotation marks omitted).

In *In re TXNB*, the Fifth Circuit held that the court had related to jurisdiction over a dispute between two non-debtor parties when, depending on the outcome, either the defendant or the debtors owed money to the plaintiff.  *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007).

> The Fifth Circuit explained:

> Although [the] proceeding involved only a claim against purchaser's assets, someone, either debtors or purchaser, owed producer money for the gas, and if it was purchaser, then purchaser would have discharged a liability of the debtors and probably would file a claim against debtors' estates for reimbursement, and given the parties' different contractual arrangements with debtors and different statutory bases for their claims, identity of the party that debtors owed for producer's gas was likely to affect administration of the estates and to alter debtors' rights and liabilities.

*In re TXNB Internal Case*, 483 F.3d 292 (5th Cir. 2007).

In *In re Wood*, the Fifth Circuit dealt with a case where the plaintiff filed one complaint against multiple defendants, including the debtor, seeking liability for their *joint conduct*.  The Fifth Circuit explained how an action against a non-debtor defendant could potentially affect the estate:

> Success against any of the defendants will have a potential effect on the estate. For example, if Dr. Wood [the debtor] and his wife are held liable but Barham is not, the bankrupt estate may bear the entire burden of the judgment. If, on the other hand, Barham is found jointly liable, the estate may bear only a portion of the judgment. Moreover, in filing the complaint, the plaintiff challenged the

> combined actions of both the debtors and Barham, a non-debtor. Resolution of the dispute will necessarily involve, therefore, consideration of Barham's involvement in those actions. We find support in the Court of Appeals for the Sixth Circuit and lower courts, which have held that when the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334.

*In re Wood*, 825 F.2d 90, 94 (5th Cir. 1987).

### B.  Analysis

As Jenrob noted, the first, sixth, and seventh causes of action asserted in the original complaint against the non-debtor defendants are not reliant on an alter ego theory. (ECF No 29 at 4-6).  Additionally, Jenrob's garnishment action against Lone Star Bank and First National Bank is not based on veil-piercing. Finally, the Court must consider whether it has jurisdiction over Jenrob's suit to foreclose on an Abstract of Judgment against EBI.  Accordingly, the Court must decide whether the Court has "related to" jurisdiction for each of these five causes of action against non-debtor parties.

**First Cause of Action**

The first cause of action is a breach of contract of the Oral Agreement against defendants Barbosa, EBI, and Hidalgo LLC (debtor), and Hidalgo Inc.

Jenrob alleges that under the Amended Cold Storage Lease, (i) Hidalgo was to pay increased rent, (ii) EBI was waiving part of its importation fees to be applied to rent arrearages, (iii) defendants executed a note in favor of Jenrob, to be paid by Barbosa and Hidalgo, and (iv) after all arrearages were cured, Hidalgo would take over half the monthly operating costs of the cold storage facility. (ECF No. 29 at 4).  Under the Oral Agreement, Jenrob claims that each defendant was obligated to pay a perpetual $220.00 fee based on Jenrob's importation fees and in exchange all defendants would be relieved of their various payment obligations under the amended Cold Storage Lease. *Id*.

Defendants argue that "[a] state court finding against EB and/or Barbosa on any of these claims will have a direct impact on the Hidalgo bankruptcy by effectively making a determination on a breach of a lease or oral contract, without the inclusion of a party to the lease or contract, specifically Hidalgo…Hidalgo's claims and defenses may perish without being adequately considered if a ruling against the other Defendants is issued in state court that could be considered collateral estoppel or res judicata to the same claims in the case against the debtor." (ECF No. 31 at 6).  Defendants seem to imply that a state court finding that EBI and/or Barbosa breached the Oral Agreement with Jenrob would necessarily lead to a determination that Hidalgo also breached the Oral Agreement with Jenrob.  The Court rejects this argument.  The Court has already ruled that the claims asserted against the debtor and all veil-piercing claims will not be remanded to state court.  For the claims at issue, Jenrob alleges that "each Defendant is independently liable under each of the remaining causes of action." (ECF No. 29 at 3).  Res judicata would not apply to claims asserted against Barbosa and EBI in state court because Hidalgo would not be a party to the suit. *See Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000) (stating that res judicata is only appropriate if the parties to both actions are identical).  Nor would a state court finding that Barbosa or EBI breached the Oral Agreement collaterally estop Hidalgo from arguing that it did not breach the Oral Agreement.  Collateral estoppel would not apply because these are distinct fact questions.  Accordingly, a state court finding that Barbosa breached the Oral Agreement with Jenrob would not necessarily lead to a determination that Hidalgo breached the Oral Agreement.

The Court finds that it has "related to" jurisdiction for different reasons.  Success against Barbosa and/or EBI in state court could have a potential effect on the estate.  If Jenrob were to succeed on its breach of contract claim against EBI and/or Barbosa and obtained a judgment in

state court, this could eliminate or reduce its claim for damages against the Hidalgo bankruptcy estate.

Jenrob filed a proof of claim against the Hidalgo estate for $1,169,711.79, with a notation that it had other unliquidated claims that may exceed $4 million.  The $1,169,711.79 amount is based on the summary judgment order from the state court suit and the other claims that may exceed $4 million represent Jenrob's remaining causes of action from the state suit. (Case No. 13-70239, ECF No. 48).

In the original complaint, Jenrob contends that as a result of each defendant's breach of the oral agreement, Jenrob suffered damages such as (i) loss of over $4,000,000.00 in equity owned in the premises, (ii) $21,313.55 in unpaid rental income under the Dry Storage Lease, (iii) $806,400.27 in unpaid rental income under the Cold Storage Lease, and (iv) other fees and interest.  Therefore, obtaining a judgment against Barbosa and EBI in state court could limit Jenrob's recovery against the Hidalgo bankruptcy estate.  Conversely, if Barbosa and EBI were not held liable in state court, the bankrupt estate may bear the entire burden of a judgment.

For example, if the state court finds that Barbosa and/or EBI breached the oral agreement and awards Jenrob $1,000,000.00 in damages for unpaid rent and interest under the Cold and Dry Storage Leases, this could potentially limit or eliminate Jenrob's recovery against the Hidalgo estate for unpaid rent under those same leases.

This is similar to the *In re TXNB* case, where the Fifth Circuit held that a bankruptcy court has "related to" jurisdiction over a dispute between two non-debtor parties when, depending on the outcome, either the defendant or the debtor owed money to the plaintiff.  In that case, the Fifth Circuit went as far as saying that "the mere identity of the party that debtors

owed for a debt may affect administration of the estates and alter the debtors' rights and liabilities." *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir. 2007).

The fact that Jenrob sued the defendants under an alter ego theory and alleges that the defendants are jointly and severally liable only strengthens the degree to which these cases are interrelated.  In *In re Wood* the Fifth Circuit held that when a plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334.   *In re Wood*, 825 F.2d 90, 94 (5th Cir. 1987).

Additionally, if the state court were to award damages against Barbosa and EBI and hold them independently accountable for their obligations, then this could eliminate or substantially reduce Hidalgo's veil piercing claims against Barbosa and EBI. *See Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir. 1987)( "A corporation may pierce its own corporate veil and hold accountable those who have misused the corporation in order to meet its corporate obligations.").  Accordingly, the Court has "related to" jurisdiction for this cause of action.

**Sixth Cause of Action**

The sixth cause of action is a fraudulent inducement claim against all of the defendants. Jenrob alleges that each defendant made misrepresentations in order to induce Jenrob to enter into the Oral Agreement.  Jenrob's theory is that each defendant promised to pay Jenrob the perpetual $220.00 fee to induce Jenrob to enter into the Oral Agreement.

For the fraudulent inducement claim, Jenrob alleges the same damages (loss of equity, unpaid rent under the leases, etc.) that it does for its breach of contract claim.  Similarly, if the state court finds that Barbosa and/or EBI fraudulently induced Jenrob into the oral agreement and awards Jenrob $1,000,000.00 in damages, this could reduce or eliminate the damages recovered for Jenrob's fraudulent inducement claim against the Hidalgo estate. For the same reasons

discussed above, a judgment against Barbosa and/or EBI could affect the debtor's veil piercing claims. Accordingly, the Court has "related to" jurisdiction for this cause of action.

**Seventh Cause of Action**

The seventh cause of action is a tortious interference with contractual relations claim against defendants EBI and Barbosa. This cause of action is different from the first two because Jenrob did not assert this cause of action against Hidalgo in its original complaint.  Jenrob alleges that Barbosa and EBI interfered with the relationship between Jenrob and its secured lenders by negotiating with the secured lenders to purchase the premises following the foreclosures.  (ECF No. 29 at 5).  Jenrob's alleged damages for this cause of action include the $4,000,000.00 for lost equity in the premises and damages resulting from Jenrob's loss of use of the premises after the date of the Bank's foreclosure.

Although this cause of action has not been brought directly against Hidalgo, it could have a substantial effect on the Hidalgo estate.  If a state court were to award $4,000,000.00 in damages for lost equity against Barbosa and/or EBI, this could affect Jenrob's claims against the Hidalgo estate.  The other "claims that may exceed $4,000,000.00" in Jenrob's Proof of Claim appear to relate to their attempted recovery of its lost equity.  Therefore, if the state court awards Jenrob with damages for lost equity against Barbosa and EBI, Jenrob's "claims that may exceed $4,000,000.00" against Hidalgo may be eliminated.

Additionally, if the state court were to award damages against Barbosa and/or EBI for its $4,000,000.00 in lost equity, then this could eliminate or substantially reduce Hidalgo's veil piercing claims against Barbosa and EBI.  Accordingly, the Court has "related to" jurisdiction for this cause of action.

**Garnishment Action**

Jenrob's garnishment action against First National Bank and Lone Star Bank seeks to garnish the funds of defendant EBI. (ECF No. 14 at 2).  The garnishment is based upon the judgment severed into Cause No. 1857-12-B. The amount of the judgment against EBI was $360,450.29, including principal, interest, and attorneys' fees and costs.  This garnishment action is an attempt to collect on a judgment against EBI arising from the 332nd District Court's partial summary judgment order on causes of action Two, Three, and Four.  On July 9, 2013, the debtor (Hidalgo Logistics, LLC), Hidalgo Cold Storage, Inc., EBI, and Efrain Barbosa all filed motions to intervene in the garnishment action but the State Court did not rule on these motions prior to removal.

Although the debtor is not a party in this lawsuit, the Court has "related to" jurisdiction for this action because it could affect the amount of Jenrob's claim against the Hidalgo bankruptcy estate.  If the state court grants Jenrob's application for writ of garnishment and allows Jenrob to collect $360,450.29 from EBI, this could reduce Jenrob's claim against the Hidalgo estate and could affect Hidalgo's veil-piercing claims against EBI.

**Suit to Foreclose on an Abstract of Judgment**

This lawsuit is another attempt to enforce the Partial Summary Judgment Order that relates to the severed action that was previously removed to this court on August 13, 2013.  On August 26, 2013, after the three lawsuits were removed, Jenrob filed a suit to foreclose on an Abstract of Judgment which seeks declaration of a lien on EBI's property and seeks judicial foreclosure of the lien.  On October 14, 2013, EBI removed this foreclosure action from the 370th District Court of Hidalgo County.  The Court subsequently consolidated EBI's removal with the

original removal.  The Court has jurisdiction over this lawsuit for the same reasons the Court has "related to" jurisdiction over the garnishment action.

**Stern Argument**

Jenrob argues that the Court lacks "related to" jurisdiction because the Court does not have the constitutional authority under *Stern v. Marshall* to enter a final judgment with respect to the claims. (ECF No. 33 at 5). "Lacking authority to enter a final order on these claims, this Court is unable to adjudicate these claims to an 'outcome' as those terms are used in *Zale* and *TXNB*. Because this Court cannot deliver an outcome with respect to these claims, these claims against Non-Debtor Defendants have no 'conceivable effect' on the Debtor's estate." *Id*.

Plaintiff is conflating the issue of this court's constitutional authority with the "related to" jurisdictional question.  These are two separate inquiries.  At this time, the Court is only deciding whether there is "related to" jurisdiction for each cause of action.  If this adversary proceeding must ultimately be decided by the District Court, that issue will be addressed at a later date.

**Permissive Abstention**

Even if the requirements for mandatory abstention are not met, the Court may abstain from hearing a proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). "Nothing ... prevents a court from permissively abstaining under § 1334(c)(1) where some, but not all, of the requirements for mandatory abstention are met. The decision to abstain or not to abstain is committed to the discretion of the district court [.]" *Gober v. Terra + Corp. (In re Gober),* 100 F.3d 1195, 1207 (5th Cir.1996). In exercising its "broad discretion" to decide whether to abstain under § 1334(c)(1), a court may consider the following non-exclusive factors:

1)  the effect or lack thereof on the efficient administration of the estate;

2)  the extent to which state law issues predominate over bankruptcy issues;

3) the difficult or unsettled nature of applicable law;

4) the presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

5) the jurisdictional basis, if any, other than § 1334;

6) the degree of relatedness or remoteness of proceeding to main bankruptcy case;

7) the substance rather than the form of an asserted core proceeding;

8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9) the burden of the bankruptcy docket;

10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11) the existence of a right to a jury trial;

12) the presence in the proceeding of non-debtor parties;

13) comity; and

14) the possibility of prejudice to other parties in the action.

*Shipley Garcia Enters., LLC v. Cureton,* 2012 WL 3249544, at *12 (S.D.Tex. Aug. 7, 2012) (quoting *Ramirez v. Rodriguez (In re Ramirez),* 413 B.R. 621, 631–32 (Bankr.S.D.Tex.2009)).

After balancing the factors, the Court finds that permissive abstention is not appropriate. The removal record was the only evidence admitted for determining whether the Court should permissively abstain.  (ECF No. 1-1: 1-7).  After reviewing the record, the only factors that appear to favor abstention are the jurisdictional basis (which is limited to § 1334), the existence of a right to a jury trial, and the presence of non-debtor parties.

Three factors that strongly disfavor abstention include (i) the efficient administration of the estate, (ii) the feasibility of severing state law claims from core bankruptcy matters, (iii) and the degree of relatedness of the proceedings to the main bankruptcy case.  Most of the claims in

the state court law suit are dependent on one set of facts, those involving the agreements between Hidalgo and Jenrob. The complaint can be broken down into three groups of claims: independent claims against the debtor, independent claims against the non-debtor defendants, and the debtor's veil piercing claims against the non-debtor defendants. The debtor is a named defendant in five of the seven causes of action (all but the third and seventh). Because those five causes of action assert claims against the estate, they are core matters under 28 U.S.C. § 157(b)(2)(B). The debtor's veil piercing claims are included in five of the seven causes of action (all but the sixth and seventh). The debtor's veil piercing claims are property of the estate.

Additionally, Jenrob alleges that the debtor and non-debtor defendants are jointly and severally liable for nearly every cause of action. Jenrob's basis for arguing that the defendants are jointly and severally liable appears to be through its alter ego theory. Jenrob is essentially seeking the same damages against each of the defendants, which includes: (i) the equity in the premises and (ii) the payment of unpaid rents due under the Dry Storage Lease and Cold Storage Lease.

The issues involved in the removed adversary proceedings are the same as the issues related to Hidalgo's objection to Jenrob's proof of claim in the bankruptcy case. Specifically, Hidalgo argues that (i) the state court's order granting partial summary judgment was procedurally and substantively flawed, and thus invalid; (ii) the order was in any event interlocutory; (iii) severance was improperly granted; (iv) the order was granted by opposing counsel's client; and (v) Jenrob's claims are substantively without merit.

Although these three state law causes of action (first, sixth, and seventh) against the non-debtor defendants are not reliant on piercing the corporate debtor's veil, they are inextricably related to the remaining four causes of action. While the first cause of action includes

independent bases for relief against the non-debtor defendants, Jenrob alternatively requests relief under an alter ego theory.  (ECF No. 28-2 at 22).  Moreover, Jenrob contends that Hidalgo, Barbosa, and EBI are jointly and severally liable under the first and sixth causes of action. If the Court were to remand these three claims against non-debtor defendants, then there would be two separate courts deciding whether the defendants are jointly and severally liable under these causes of action.

The Court's retention of these claims would allow for a far more efficient administration of the estate because (i) Jenrob seeks essentially the same damages for these three causes of action that they do for the remaining four, (ii) the debtor's veil piercing claims are interrelated to these three causes of action, and (iii) Jenrob alleges that defendants are jointly and severally liable for all but one cause of action.  Accordingly, Jenrob's motion for permissive abstention is denied.

**Defendants' Motion to Vacate the Severance**

On January 27, 2014, defendants filed a motion to vacate the state court's order of severance.  At the January 29, 2014 hearing, counsel for Jenrob stated that he would file a response brief to defendants' motion.  Jenrob has not filed such brief.

The severance order was included in the Partial Summary Judgment Order. (ECF No. 1-4 at 29-32). The 332nd District Court granted partial summary judgment on causes of action Two, Three, and Four and then severed these three causes of action from the remaining four.

The Order granted summary judgment (i) against Hidalgo and EBI for cause of action Two (breaching the dry storage lease) in the total sum of $621,644.18 in unpaid rents plus interest and certain fees, (ii) against EBI for cause of action Three (breach the cold storage lease) in the total sum of $21,313.55 in unpaid rents plus interest and certain fees, and (iii) against

Hidalgo and EBI for cause of action Four, which foreclosed Plaintiff's security interest in certain personal property.  The Order also states "this Order shall be final and appealable." (ECF No. 1-4 at 32).  However, causes of action Two and Four were originally pled against all of the named defendants (including Barbosa) and cause of action Three (breach of contract on the dry storage lease) was pled against EBI and Barbosa.  The state court severed the second, third, and fourth causes of action even though the claims against Barbosa had not been adjudicated.  Accordingly, neither the summary judgment order nor the severance order was a final order because they did not dispose of all claims and parties. *See Lehmann v. Har-Con Corp.,* 39 S.W.3d 191, 205-206 (Tex. 2001) ("As the order recites and as the record demonstrates, the defendant named in the order was not the only defendant remaining in the case. Thus, we conclude that a final and appealable judgment was not rendered in either case.").

We do not sit as an appellate court in this matter.  Instead, the Court will consider defendants' motion to vacate the severance order as if this Court issued the order itself.  *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988)("In sum, whenever a case is removed, interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed. The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered."); *See* Fed. R. Bankr. P. 9027(i), which provides that "[a]ll injunctions issued, orders entered, and other proceedings had prior to removal shall remain in full force and effect until the dissolved or modified by the court.").

The Advisory Committee Notes to Rule 60(b) of the Federal Rules of Civil Procedure explain that "interlocutory judgments are not brought within the restrictions of this rule, but rather they are left subject to the complete power of the court rendering them to afford such relief

from them as justice requires." Fed. R. Civ. P. 60(b) advisory committee's note.  Because the severance order was interlocutory, this Court has broad discretion to deny or grant defendants' motion to vacate the severance order.

The state court order provided that "this Order shall be final and appealable." (ECF No. 1-4 at 32).  However, the Summary Judgment Order did not adjudicate Jenrob's claims against Efrain Barbosa, even though the 2nd, 3rd, and 4th causes of action were brought against Mr. Barbosa.  Therefore, the severed lawsuit consisted of causes of action Two, Three, and Four against defendants Hidalgo, EBI, and Barbosa even though the claims against Barbosa had not been adjudicated.  Because the order did not dispose of all claims and parties, it was not a final order.  *Lehmann v. Har-Con Corp.,* 39 S.W.3d 191, 205-206 (Tex. 2001).  Accordingly, at a minimum, the order must be amended to eliminate the statement that the order is final and appealable.

The severance order should also be modified because the severed causes of action were so intertwined as to involve the same or identical facts and issues. Rule 41 of the Texas Rules of Civil Procedure provides "(a)ny claim against a party may be severed and proceeded with separately." Tex. R. Civ. P. 41. "For severance to be proper, the following elements are necessary: (1) the controversy must involve more than one cause of action, (2) the severed cause must be one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed causes must not be so intertwined as to involve the same or identical facts and issues." In certain instances, there is a fourth requirement that the severed causes of action cannot relate to the same subject matter." *Straughan v. Houston Citizens Bank & Trust Co.*, 580 S.W.2d 29, 33 (Tex. Civ. App. 1979).

As set forth in detail above, the three severed causes of action were interwoven with the remaining four causes of action. All seven causes of action involve the same facts and issues.  In fact, Jenrob's original petition incorporated by reference the factual allegations into every cause of action.  Moreover, all of the causes of action seek the same damages (with the exception of the additional "loss of use" damages alleged for the seventh cause of action), which include: (i) equity in the premises and (ii) unpaid rent from the Dry and Cold Storage Leases. Additionally, the three severed causes of action (Two, Three, and Four) each incorporate the allegations included in Jenrob's first cause of action.  The claims against each of the defendants (Barbosa, Hidalgo, and EBI) are inextricably intertwined with one another because Jenrob sued (i) the defendants under an alter ego theory and (ii) has alleged that the defendants are jointly and severally liable.

Accordingly, defendants' motion to vacate the severance order is granted.

**Conclusion**

The Court finds that it has "related to" jurisdiction for each removed cause of action. Accordingly, Jenrob's motion to remand for lack of jurisdiction is denied.  The Court also denies Jenrob's motion for permissive abstention.  Defendants' motion to vacate the severance order is granted.

The Court will enter an Order consistent with this Memorandum Opinion.

SIGNED **May 15, 2014.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE